# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

**ANDREW CHRISTOPHER KNIGHT**                                 **PLAINTIFF**

**v.**                          **CIVIL ACTION NO. 4:18-CV-P34-JHM**

**JASON WOOSLEY** *et al.*                                               **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Andrew Christopher Knight leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss several claims, but allow one claim to proceed for further development.

### I. SUMMARY OF COMPLAINT

Plaintiff was incarcerated at Grayson County Detention Center (GCDC) before he was transferred to Daviess County Detention Center (DCDC). He brings this action against the following five Defendants – Jason Woosley, GCDC Jailer, in his official capacity only; Roy Washington, GCDC "Nurse Practitioner/Acting Physician," in both his official and individual capacities; "Nurse 1," in his official capacity only; "Nurse 2," in her official capacity only; and "C.O. Embry," GCDC Guard, in his official capacity only.

In the complaint, Plaintiff states that on February 8, 2018, he requested to see medical staff at GCDC concerning his mental health medication. He states that he then received a response in writing indicating that Defendant Washington had prescribed him a mental health medication based upon Plaintiff's records from the facility where he had previously been incarcerated. Plaintiff states that Defendant Washington ordered this medication for him without examining him and that the medication caused "uncontrollable physical side effects." He then

writes that he refused this medication and "requested to be seen." Plaintiff then alleges that on February 13, 2018, he was informed in writing that this was the only medication that would be ordered for him based upon his medical records. Plaintiff states that he then requested that the medication be discontinued. Plaintiff alleges that he requested to see a "mental health professional/ psychiatrist" on February 21, 2018, but was instead seen by Defendant "Nurse 1." Plaintiff states that he told "Nurse 1" that he needed to see a psychiatrist to be evaluated and that "Nurse 1" told him that he would speak with Defendant Washington about this request. Plaintiff states that he filed another request "to medical the following day," and that on February 23, 2018, he was seen by Defendant "Nurse 2." Plaintiff alleges that Defendant "Nurse 2" told him that Defendant Washington had stated that he would not see or treat Plaintiff and that he would not refer Plaintiff to a mental health professional. Plaintiff alleges that Defendant "Nurse 2" told him this in front of Defendant Embry.

Plaintiff states that on February 25, 2018, he "placed another request for relief concerning past back surgeries," but that he received a response from medical telling him that he could purchase medication from the commissary.

Plaintiff states that on February 27, 2018, he was transferred to DCDC "without response from any grievance or requests I placed." Plaintiff claims that he was transferred "to keep from being treated medically" at GCDC and so that he would be unable complete the § 1983 paperwork he had requested so that he could file this action.

As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief "in the form of on-site mental health professional staffed; group and mental health counseling when requested; on site psychiatrist included; separate housing for mental health patients when requested."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). )). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21

3

(1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Official-Capacity Claims

Plaintiff sues all Defendants in their official capacities. "[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Defendants are actually against their employer, which is Grayson County. *See, e.g.*,

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Because Plaintiff does not claim that any alleged violation of his constitutional rights was based upon a custom or policy implemented or endorsed by Grayson County, the Court will dismiss Plaintiff's official-capacity claims for failure to state a claim upon which relief may be granted.

## B. Individual-Capacity Claims

Plaintiff sues only Defendant Washington in his individual capacity. However, the Court will also analyze Plaintiff's allegations against the other Defendants to determine whether he should be allowed to amend his complaint to name them in their individual capacities as well. *See, e.g.*, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) of the Federal Rules of Civil Procedure, a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].").

### 1. Defendant Jailer Woosley

Plaintiff does not make specific allegations against Defendant Jailer Woosley. Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). However, even if the Court were to construe Plaintiff's complaint as attempting to hold Defendant Jailer Woosley liable based upon his supervisory position at GCDC, Plaintiff's claim against him would still fail. This is because the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting

*Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Indeed, "[i]n order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Thus, even if Plaintiff had sued Defendant Woosley in his individual capacity, the Court concludes that Plaintiff has failed to state a claim against him.

### 2. Defendant Washington

Plaintiff seems to claim that Defendant Washington was deliberately indifferent to his mental health condition. The Eighth Amendment protects convicted prisoners from the "unnecessary and wanton infliction of pain." U.S. Const. amend. VIII. An Eighth Amendment claim requires a plaintiff to prove two distinct components - one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (citations and internal quotation marks omitted). To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that he is "incarcerated under conditions posing a substantial risk of serious harm." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.* The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent

7

of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

For purposes of this initial review, the Court will assume that Plaintiff's mental health condition constitutes a sufficiently serious medical need. With regard to Defendant Washington, GCDC's Nurse Practitioner/Acting Physician, Plaintiff alleges that, at his request, Defendant Washington prescribed him medication for a mental health condition. Plaintiff, however, objects to Defendant Washington's prescribing of this medication because it was not based upon an examination of Plaintiff, but upon his medical records from a facility where he was previously incarcerated. Plaintiff also alleges that he could not take the medication Defendant Washington prescribed because it caused him "uncontrollable physical side effects" and that Defendant Washington refused to prescribe him another medication, refer him to a mental health provider, or see or treat him for his mental health needs.

Based upon these allegations, **the Court will allow Plaintiff's deliberate indifference claim to proceed against Defendant Washington in his individual capacity**. In allowing this claim to go forward, the Court passes no judgment on its ultimate merit or outcome.

### 3. Defendants "Nurse 1," "Nurse 2," and "C.O. Embry"

Plaintiff's claims against these Defendants also appear to be that they were deliberately indifferent to his mental health condition. Plaintiff's allegation against Defendant "Nurse 1" is that Plaintiff told him that he needed to be evaluated by a psychiatrist and that Defendant "Nurse

8

1" stated that he would speak to Defendant Washington about Plaintiff's request. Plaintiff's only allegation regarding Defendant "Nurse 2" is that she told Plaintiff that Defendant Washington had stated that he would not refer Plaintiff to a mental health provider or treat Plaintiff himself. And Plaintiff's only allegation against Defendant "C.O. Embry" is that he witnessed the conversation between Plaintiff and "Nurse 2." Upon review, the allegations simply do not suggest that these Defendants acted with reckless disregard to any risk of harm to Plaintiff. Indeed, Plaintiff does not explain what these Defendants could or should have done differently in the circumstances described. He does not, for example, claim that they could have prescribed a different medication for him or referred him to mental health provider. Rather, he indicates that the authority to take these actions lay with Defendant Washington. Thus, even if Plaintiff had sued these Defendants in their individual capacities, the Court would dismiss Plaintiff's claims against them for failure to state a claim upon which relief may be granted.

### 4. Back Surgeries

Plaintiff also complains that on February 25, 2018, he "placed another request for relief concerning past back surgeries," but that he received a response from medical telling him that he could purchase medication from the commissary. The Court can discern no claim of a constitutional dimension in this allegation. The Court does not find Plaintiff's summary reference to "past back surgeries" sufficient to establish that he suffered from a serious medical need. However, even if it did, Plaintiff's allegation does not suggest that any Defendant was deliberately indifferent to this need. Plaintiff, for example, does not claim that the medications available at the commissary were ineffective in treating his condition or that he could not afford to buy the medications at the commissary. *See, e.g.*, *Collins v. Warden, London Corr. Inst.*, No. 2:12-cv-1093, 2014 U.S. Dist. LEXIS 56516, at *28-29 (S.D. Ohio Apr. 23, 2014) (recognizing

9

that a prisoner's Eighth Amendment rights are not violated by requiring him to pay for over-the-counter pain relievers when he has the ability to pay for them); *Slattery v. Mohr*, No. 2:11-CV-202, 2012 U.S. Dist. LEXIS 99568, at *25-26 (S.D. Ohio July 17, 2012) (finding that inmate forced to purchase over-the-counter medications from commissary pursuant to policy did not establish an Eighth Amendment violation where he failed to demonstrate that he was denied medical care due to his inability to afford medication); *cf. White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) (citation omitted) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay."). Thus, this claim will be dismissed for failure to state a claim upon which relief may be granted.

### C. Transfer Claims

Plaintiff also claims that his constitutional rights were violated when he was transferred from GCDC to DCDC because he was "transferred . . . to keep from being treated medically there and not to be able file the [§ 1983] paperwork [he had] requested."

The law is clear that inmates have no constitutional right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution. *Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections cabinet. K.R.S. § 197.065.

Moreover, to the extent that Plaintiff is alleging a First Amendment claim based upon interference with his right of access to the courts, this claim fails because Plaintiff has not alleged any actual injury or prejudice to his litigation. *Geiger v. Prison Realty Tr.* 13 F. App'x

313, 315 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 353-53 (1996)). Plaintiff was not prevented from filing that instant § 1983 action.

And, to the extent that Plaintiff is alleging that his transfer was retaliatory, his claims also fail. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. With regard to the second element, the Sixth Circuit has repeatedly held that a prison transfer is generally not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct. *Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001) ("A transfer to the general population of another prison is not considered sufficiently adverse . . . ."); *Geiger v. Prison Realty Tr.,* 13 F. App'x at 315 (holding that the plaintiff's transfer to another prison was not retaliatory since the transfer did not prevent or deter him from continuing to write grievances and file lawsuits.); *Goddard v. Ky. Dep't of Corr.*, No. 99-5348, 99-5971, 2000 U.S. App. LEXIS 1912, at *6 (6th Cir. Feb. 7, 2000) ("The transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights.").

Accordingly, Plaintiff's claims regarding his transfer will be dismissed for failure to state a claim upon which relief may be granted.

**D. Injunctive Relief**

Finally, the Court observes that Plaintiff's requests for injunctive relief are moot because he is no longer incarcerated at the GCDC, the institution where his claimed constitutional injuries occurred. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration

11

there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot because he was no longer confined to the institution where the alleged wrongdoing occurred). Therefore, Plaintiff's claims for injunctive relief will be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's official-capacity claims against all Defendants, his individual-capacity claims against Defendants "Nurse 1," "Nurse 2," and "C.O. Embry" for deliberate indifference to his mental health condition, and his claims related to his past back surgeries, his transfer to DCDC, and for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter an Order Directing Service and Scheduling Order concerning the individual-capacity claim the Court has allowed to proceed against Defendant Washington for deliberate indifference to Plaintiff's mental health condition.

**The Clerk of Court is DIRECTED to terminate Defendants Jailer Woosley, "Nurse 1," "Nurse 2," and "C.O. Embry" as parties to this action.**

Date: March 26, 2018

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
    Grayson County Attorney
4414.011